UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BENAMAX ICE, LLC, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | Civil Action No. 20-8069 |
| v. | : | **OPINION** |
| MERCHANT MUTUAL INSURANCE CO., JOHN DOES (1-10), ABC COMPANIES (1-10) | : | |
| *Defendants*. | : | |

This matter comes before the Court on Motion to Dismiss of Defendant Merchant Marine Insurance Company ("Merchants") pursuant to Fed. R. Civ. P. 12 (b)(6). Plaintiff Benamax Ice, LLC ("Benamax"), which operates a restaurant[1] in Westmont, New Jersey, filed this breach of contract and declaratory judgment action alleging it is entitled to insurance coverage from Defendant Merchants for business income losses resulting from the impact of the COVID-19 global pandemic and the governmental response to contain the spread of the virus. Specifically, Benamax claims that both federal and state government orders mandating that in-person dining be suspended at restaurants ("Governmental Orders") has negatively impacted its business and, as a result, Benamax seeks coverage for losses sustained for the business interruption caused by the cumulative effect of the pandemic and the social constraints imposed by the government.

The parties agree that Merchants issued a Commercial Businessowners Policy (the "Policy") to Benamax covering, inter alia, losses caused by direct physical loss of or

---

[1] Benamax Ice operates a walk-in style quick service food retail establishment serving frozen desserts including, but not limited to Ice Cream and Italian Ice.

damage to property. Merchants moves to dismiss on the basis that Benamax's economic losses are not covered under the Policy and because Benamax has not sufficiently alleged qualifying physical damage and because the Policy's "Virus or Bacteria" exclusion applies and precludes coverage.

The unfortunate circumstances many businesses face has resulted in an uptick in insurance litigation over policy coverage for economic losses endured because of the public's trepidation and the government's social gathering management policies.  The litigation, although recent, has quickly accrued caselaw considering policy coverage, such as and including Policy one at issue here.   Defendant argues that several courts, including some in this district, have interpreted the Merchant Policy and found that the plaintiffs' economic losses in those cases, as related to the COVID-19 pandemic, are not covered for a variety of reasons, but most notably because of the Virus or Bacteria exclusion. *See Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co., No. 20-CV-08257 (NLH), 2021 WL 567994, at \*7 (D.N.J. Feb. 16, 2021)* ("While the Court recognizes the significant harm suffered by individuals and businesses as a result of the COVID-19 pandemic, the Policy provided by Defendant explicitly barred coverage for the losses allegedly suffered by Plaintiff here.")*; Gavrilides Management Co. v. Michigan Insurance Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) (granting insurer motion to dismiss); *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 CIV 3311 (VEC) (S.D.N.Y. May 14, 2020) (denying policyholder's preliminary injunction motion based upon failure to demonstrate likely success on the merits).

Benamax's Complaint alleged that it suffered "direct physical loss of" or damage to property" because its property was rendered unusable for its intended purpose because of New Jersey Executive Order 107, commonly referred to the 'stay-at-home order.'  The

2

closing of restaurants resulted in a direct physical loss of or damage to property because the Benamax property was rendered unusable for its intended purpose qualifying it for coverage. The reasonable expectations of the insured dictate that the definition of "property damage" in Section II of the Policy would apply to all sections of the policy. For this reason, Benamax claims that both *Gavrilides Management Co.* and *Social Life Magazine Inc.* are of no persuasive value and that authority exists for the Court to deny the motion. In addition, Benamax claims that it is entitled to "Civil Authority" coverage because it was denied access to its property resulting in property damage. Finally, Benamax argues that the Virus or Bacteria exclusion may not be considered on a Rule 12(b)(6) motion to dismiss, and even if it can be it is precluded by regulatory estoppel.

I.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v.*

---

[1] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). *Accord Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

*Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556

---

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Under New Jersey law, insurance contracts are subject to special rules of interpretation because they are contracts of adhesion. *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001) (citations omitted). "If the policy language is clear, the policy should be interpreted as written, [but][i]f the policy is ambiguous, the policy will be construed in favor of the insured." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (quoting *Nav–Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 933 (N.J. 2005). When there is ambiguity, the insurance policy should be interpreted to "comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Zacarias*, 775 A.2d at 126.

New Jersey courts have held that insurance policy exclusions must be narrowly construed and that the burden is on the insurer to bring the case within the exclusion. *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (1998) (citation omitted). "Nevertheless, [New Jersey courts] adhere to the principle that an insurance policy should generally be interpreted 'according to its plain and ordinary meaning,' so as not to disregard the 'clear import and intent' of a policy exclusion." *Id.* (citations omitted).

## II. Discussion

Benamax purchased the Policy, a Merchants Advantage Plus Businessowners Policy from Defendant for its Westmont property for the Policy Period of February 15, 2020 through February 15, 2021. Compl. at ¶¶ 8-11. Benamax alleges that it suffered "direct physical loss of" or "damage to property" as contemplated by the Policy because its property was rendered unusable for its intended purpose because of New Jersey Executive Order 107, commonly referred to the 'stay-at-home order.'[2] Defendant claims that Benamax could have adapted to a "take-out only" service method and continued utilization of the property. The parties agree that the Policy provides coverage for Business Income and action of Civil Authority.

Business Income coverage is provided, per the Policy, as follows:

    f. Business Income
    (1) Business Income

---

[2] The Policy defines "suspension: as: "(a) The partial slowdown or complete cessation of your business activities; or (b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies." See Deft. Mot. to Dismiss, Doc. 6-3 pg.42 of 249. Plaintiff acknowledges that the Complaint states, "Benamax was required to close its food serve establishment" whereas the Policy requires a suspension of operations. Plaintiff submits that while an amended pleading could remedy the differing language, that it is not necessary because Plaintiff's averment is fundamentally the same as the requirement of the Policy.

>       (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located. With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means: (i) The portion of the building which you rent, lease or occupy; and (ii) Any area within the building or on the site at which the described premises are located, if that area services, is used to gain access to, the described premises.
>       (b) We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.
>       (c) Business Income means the:
>       (i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and (ii) Continuing normal operating expenses incurred, including payroll.
>       . . . .
>       (3) With respect to the coverage provided in this Additional Coverage, suspension means: (a) The partial slowdown or complete cessation of your business activities; or
>       (b) That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

*See Policy, Deft. Ex. Ex. 3 [Dkt. No. 6-3], pgs.* 41-42.

The Civil Authority coverage clause provides:

>       i. Civil Authority When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain, and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>       (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the

7

>    described premises are within that area but are not more than one mile from the damaged property; and
>        (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at pgs. 43-44.

Several courts in this district and in the New Jersey state courts have determined that an analysis of the Business Income clause and the Civil Authority Clause is unnecessary in the face of a policy which contains a Virus or Bacteria Exclusion. *See Garmany of Red Bank, INC. v. Harleysville Insurance Company & Nationwide Insurance Company,* No. 20 CV 08676 (FLW), 2021 WL 1040490, at \*6 (D.N.J. Mar. 18, 2021) ("Indeed, as I also observed in Causeway, the majority of courts to consider the issue of causation in this context, including New Jersey courts, have determined that '[t]he Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 … and any losses incurred therefrom are squarely within the exclusion.'"); *Delaware Valley Plumbing Supply, Inc., No. 20-CV-08257 (NLH), 2021 WL 567994, at \*7 (*"Therefore, '[b]ecause the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus.' ")*; N&S Restaurant LLC v. Cumberland Mutual Fire Insurance Company*, No. 20-05289 (RBK/KMW), 2020 WL 6501722, at \*3 (D.N.J. Nov. 5, 2020) (noting the differing and split conclusions regarding the interpretation of the term 'direct physical loss'" but finding it unnecessary to address given the Virus Exclusion in the policy); *see also Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at \*8-9 (N.J. Super. Ct. Nov. 5, 2020) ("Since the virus is alleged to be the

8

cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss."); *Mattdogg, Inc. v. Phil. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law. Div. Nov. 17, 2020).

Here, the Policy's "Virus or Bacteria" exclusion states that Merchants "will not pay for loss or damage caused directly or indirectly by":

> j. Virus or Bacteria
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
> (2) However, the exclusion in paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.;
> (3) With respect to any loss or damage subject to the exclusion Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

Ex. 3 at 27, 29 (Form BP 00 03 01 10).

According to Defendant, the exclusion specifies "loss or damage caused directly or indirectly by. . . any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". *See Deft. Ex. 3,* [Dkt. No. 6-3], at pp. 27, 29.  The "Virus or Bacteria" exclusion applies to the coverage at issue in this matter and is a complete defense to coverage compelling the dismissal of Plaintiff's complaint on this ground alone.

Contrary to Benamax's assertion, there is authority in this district to apply the exclusion at the motion to dismiss stage. *See N&S Restaurant LLC*, 2020 WL 6501722 at 3 ("The Third Circuit and courts within this Circuit have regularly granted motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion to coverage." (citing *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506,

9

510 (3d Cir. 2011); *see also*, *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, No. 20-5743, 2021 WL 457890, at *2 (D.N.J. Feb. 8, 2021) ("The virus exclusion applies in blanket fashion to all forms of coverage in the policy. If applicable, then, it will dispose of the case."). Moreover, consideration of the entire insurance policy is appropriate at this stage, even though it was not attached to the Complaint, because courts may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, Benamax's claims come within the Virus and Bacteria exclusion. First, the Coronavirus is a "virus" and courts have treated it and the measures[3] to contain it as coming within a virus or bacteria exclusion. *See Causeway Automotive, LLC v. Zurich Am. Ins. Co.,* No. 20-8393, 2021 WL 486917, *6 (D.N.J. Feb. 10, 2021) ("The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey.") *(citing 7th Inning Stretch LLC v. Arch Ins. Co.,* No. 20-8161, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021) ("Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiffs' losses are tied inextricably to that virus and are not covered by the policies.").

Benamax's Complaint also denotes causation of its business losses to the Coronavirus. Comp. ¶¶ 15-19. *See Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co.*, No. 20- 11771(SDW), 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020)

---

[3] New Jersey Executive Order No. 103 states that the Coronavirus induces or is capable of inducing physical distress, illness or disease. Ex. 1 ("Coronavirus disease 2019 . . . is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus").

(coverage barred because "the Policy clearly excludes coverage for damage, loss or expense arising from a virus. Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy").

Finally, the Court rejects Plaintiff's regulatory estoppel argument. In her opposition brief, Plaintiff raises, for the first time, that the doctrine of regulatory estoppel precludes the enforcement of the Virus or Bacteria exclusion for the reasons stated in *Morton Int'l v. General Accident Ins. Co.*, 134 N.J. 1 (1993). Under *Morton*, a plaintiff must allege: (1) that the insurance industry asserted one meaning and scope of a proposed exclusion to state regulatory authorities; and (2) that the industry subsequently argued for a much narrower interpretation when seeking to enforce the exclusion in litigation. *Id.*

In a similar case in this court against Defendant, where the plaintiff made nearly identical arguments in the opposition brief but not the complaint, the court held that the regulatory estoppel argument failed for factual and facial reasons. *Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, No. 20 CV 08257 (NLH), 2021 WL 567994, at *6 (D.N.J. Feb. 16, 2021). This Court adopts the reasoning in *Delaware Valley* and notes that there is strong authority for its ruling, as multiple courts in the Eastern District of Pennsylvania have recently addressed this identical issue and reached the same conclusion. *Id.* (*citing Humans & Resources, LLC, D/B/A Cadence Restaurant v. Firstline Nat'l Insurance Co.*, No. 20-CV-2152, 2021 WL 75775 (E.D. Pa. Jan. 8, 2021); *TAQ Willow Grove, LLC v. Twin City Fire Ins.*, No. CV 20-3863, 2021 WL 131555, at *8-9 (E.D. Pa. Jan. 14, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, *9-10 (E.D. Pa. Dec. 17, 2020); *Kessler*

11

*Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 2:20-CV-03376-JDW, 2020 WL 7181057, \*3 (E.D. Pa. Dec. 7, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. CV 20-3198, 2020 WL 6545893, \*5 (E.D. Pa. Nov. 6, 2020)). Plaintiff's regulatory estoppel claim will be denied because it is improperly plead and fails as a matter of law.

Thus, given the ample authority in this district, the State of New Jersey, and courts in other states[4], the Court finds that Benamax's claims fall within the Virus or Bacteria exclusion and must be dismissed for failure to state a claim upon which relief can be granted.

An Appropriate Order shall issue.

Dated: March 29, 2021                                    s/ Joseph H. Rodriguez
                                                        HON. JOSEPH H. RODRIGUEZ,
                                                        United States District Judge

---

[4] *See, eg., G*avrilides, supra,(Michigan Circuit Court ruled that an identical virus exclusion barred coverage for the policyholder's business income claims related to the COVID-19 pandemic.); *Kessler Dental Associates, P.C. v. Dentists Insurance Company*, No. 2:20-cv-03376-JDW, 2020 WL 7181057, at \*3 (E.D. Pa. Dec. 7, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "any 'virus, bacteria or other microorganism that cause or could cause physical illness, disease or disability'"); *Brian Handel D.M.D., P.C. v. Allstate Insurance Co.*, No. 20-3198, 2020 WL 6545893, at \*4 (E.D. Pa. Nov. 6, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co. of Connecticut,* No. 20-cv-04423, 2020 WL 5938691, at \*2, 5 (C.D. Cal. Oct. 2, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 20-cv-00401, 2020 WL 5240218, at \*2 (M.D. Fla. Sept. 2, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress"); *Franklin EWC, Inc. v. Hartford Financial Servs. Grp., Inc.*, 20-cv-04434, 2020 WL 5642483, at \*2 (N.D. Cal. Sept. 22, 2020) (coverage barred by Virus Exclusion stating that "[w]e will not pay for loss or damage caused directly or indirectly by [virus]. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss"); *Diesel Barbershop, LLC v. State Farm Lloyds*, 20-CV-461, 2020 WL 4724305, at \*6 (W.D. Tex. Aug. 13, 2020) (coverage barred by Virus Exclusion stating that insurer "does not insure for a loss regardless of 'whether other causes acted concurrently or in any sequence within the excluded event to produce the loss' " and finding that "it was the presence of COVID-19 in … Texas that was the primary root cause of Plaintiffs' business temporarily closing").